UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:10-CR-0340 JAM |
| Plaintiff, | |
| v. | <u>ORDER GRANTING DEFENDANT'S MOTON TO SUPPRESS EVIDENCE</u> |
| ROBERT CLINE, | |
| Defendant. | |

This matter comes before the Court on Defendant Robert Cline's ("Defendant") Motion to Suppress Evidence (Doc. #18). The United States of America (the "Government"), opposes the Motion (Doc. #23). On February 15, 2011, the Court held a hearing regarding Defendant's Motion to Suppress Evidence.

I. FACTUAL AND PROCEDURAL BACKGROUND

At about 5:40 p.m., on July 15, 2010, Defendant was driving a rented Nissan Cube down W Street in Sacramento. W is a one-way street heading west. When Defendant tried to turn left from the

1  center lane to head south on 9th Street, he hit another car that
2  was beside him in the left lane.
3      Two city police officers arrived on the scene of the accident.
4  They had been told by the police dispatcher that the accident may
5  have been caused by a drunk driver. This information was not
6  accurate and it was later determined that neither the Defendant nor
7  the other driver was drunk.  Officer Fox (then Morrison) arrived
8  first, followed by Officer Mateo.  Mateo noticed that Defendant's
9  car was not drivable, was partially blocking one of the southbound
10 lanes on 9th Street, and was "parked" in a "No Parking Anytime"
11 zone.  At approximately 5:57 p.m., Defendant told Mateo that the
12 Cube was a rental car and that he had called for a tow.
13     The parties dispute what exactly occurred between 5:57 and
14 6:25 p.m.  Defendant alleges that after Mateo spent the first few
15 minutes determining that Defendant was not drunk, he then began
16 looking for some reason to get inside the car and search it.
17 Defendant alleges that Mateo asked him for permission to search the
18 car, but Defendant repeatedly refused.  The Government claims that
19 on only one occasion during the accident investigation did Mateo
20 request to search Defendant's car.  At 6:25 p.m. Mateo advised
21 Defendant to cancel his commercial tow and that the police would
22 call their own tow.
23     While the timing is unclear, it is undisputed that Defendant
24 did not have picture identification, only a temporary driver's
25 license.  In Mateo's police report, Defendant's Exh. B, Mateo noted
26 that he spoke with Officer Fox and learned that a female passenger
27 had fled from Defendant's car before the police arrived.  Defendant
28 initially lied about the female passenger.  Mateo ran a records

check on Defendant and discovered that he had a CDC number but was not on parole or probation. Mateo also noted that he looked into the passenger front seat of Defendant's vehicle and observed pictures of men who appeared to be members of "VAGOS" – a known outlaw motorcycle gang.

Defendant claims that after they called their own tow, the officers said words to the effect of "once he gets here, we'll be able to search the car." Motion to Suppress at 3:17-18. Mateo's police report noted that Defendant "became agitated when he discovered [the officers] were going to tow his vehicle." Id. at 3:19-20.

At 6:55 p.m., the officer's tow arrived, followed by two additional police units carrying three officers, Mabunga, Villareal and Southward. Defendant refused to open the car door, so the officers asked the tow driver to use a slim jim to open the door. At that point, Defendant, knowing there was a firearm inside the car, said "you might as well put the cuffs on me now." Id. at 4:12-13. Defendant's tow arrived at about 7:25 p.m. while the police tow was still on the scene.

Officers Mabunga and Fox searched the car, finding a loaded semi-automatic assault rifle inside. The car also contained about two ounces of marijuana shake in a single bag. Because Defendant had 10-year old felony convictions out of Siskiyou County, the officers arrested him for being a felon in possession of a firearm.
//
//
//
//

3

II.   OPINION

A.   Legal Standard

The Fourth Amendment protects individuals against unreasonable searches and seizures.  U.S. CONST. amend. IV. Evidence obtained in violation of the Fourth Amendment must be excluded from a federal prosecution.  Weeks v. United States, 232 U.S. 383, 398 (1914).

A search or seizure not accompanied by a warrant is presumed to be unreasonable.  United States v. Carbajal, 956 F.2d 924, 930 (9th Cir. 1992), citing Katz v. United States, 389 U.S. 347 (1967). Consequently, the burden is on the United States to justify the search.  Id.

To be valid, an inventory search must conform to a standardized and established local procedure, and must be motivated by a concern to inventory the car's contents rather than to search for incriminating evidence.  United States v. Feldman, 788 F.2d 544, 553 (9th Cir. 1986).  Police may not use an inventory search as a pretext to investigate crime.  United States v. Bowhay, 992 F.2d 229, 231 (9th Cir. 1993); United States v. Hellman, 556 F.2d 442 (9th Cir. 1977).  However, the presence of an investigative motive does not invalidate the inventory search as long as the officer lacked discretion when conducting the inventory search. Id.

B.   Inventory Search

Defendant argues that the police lacked cause to search his vehicle.  He argues that the police called their tow truck as a pretext to take an inventory of the contents inside his car when their real motive was to investigate crime.  Defendant argues that under the California Vehicle Code and Sacramento Police Department

4

policy, the officers did not have the authority to impound or inventory the vehicle. The Government argues that Defendant's car was a hazard blocking heavy traffic and it was sitting in a "No Parking Zone." Mateo called the tow company to remove the car and, following department policy and the California Vehicle Code, the officers inventoried the contents of Defendant's car before releasing it to the tow company. The Government argues that the police had the primary motive to inventory the vehicle and a secondary motive, or at most a dual motive, to investigate potential crime.

The decision whether to impound a vehicle depends on whether the officer had the authority to seize and remove the vehicle. Miranda v. City of Cornelius, 429 F.3d 858, 864 (9th Cir. 2005). The District Court must look to state law to determine when a vehicle may be impounded and its contents inventoried: "Vehicular inventory searches must be conducted 'in accordance with the standard procedures of the [state] in order for the procured evidence to be admitted in federal court." United States v. Maddox, 614 F.3d 1046 (9th Cir. 2010), quoting United States v. Wanless, 882 F.2d 1459, 1463 (9th Cir. 1989).

The Government argues that the police officers were permitted to move Defendant's car under California Vehicle Code ("CVC") Section 22651. Section 22651 states:

> A peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, or a regularly employed and salaried employee, who is engaged in directing traffic or enforcing parking laws and regulations, of a city, county, or jurisdiction of a state

5

|   |   |
|---|---|
| 1 | agency in which a vehicle is located, may remove a vehicle |
| 2 | located within the territorial limits in which the officer |
| 3 | or employee may act, under the following circumstances: |
| 4 | …(b) When a vehicle is parked or left standing upon a highway |
| 5 | in a position so as to obstruct the normal movement of |
| 6 | traffic or in a condition so as to create a hazard to other |
| 7 | traffic upon the highway.;… or |
| 8 | …(n) Whenever a vehicle is parked or left standing where |
| 9 | local authorities, by resolution or ordinance, have |
| 10 | prohibited parking and have authorized the removal of |
| 11 | vehicles. . . . |

Defendant argues that Section 22651 does not apply to the instant case because Section 22651 is part of Chapter 10 of the Vehicle Code, which governs "Removal of Parked and Abandoned Vehicles," not wrecked vehicles awaiting a tow with the responsible party standing beside them.  According to Defendant, by its terms, Section 22651 applies to removal of cars by officers who are "engaged in directing traffic or enforcing parking laws and regulations" and these officers do not claim they were there to direct traffic as a result of the accident, nor were they engaged in parking enforcement.  Defendant further contends that subdivision (b) of Section 22651, upon which the Government specifically relies, applies only to cars that have been "parked or left standing upon a highway," not to a wrecked car that is expected to be temporarily present, pending arrival of a commercial tow service.

It is undisputed that, following the accident, Defendant's car was unable to be driven or pushed to the side of the road and it

was partially blocking one lane of traffic on 9th Street. Under the circumstances, the Court finds that the police officers did have the authority to move Defendant's car under Section 22651(b), i.e., the officers' decision that the car needed to be moved was not unreasonable or unlawful per se. However, the inquiry does not end there. The central issue in this case is whether the officers performed a lawful <u>inventory</u> of Defendant's car. As explained below, the Court finds that they did not.

California Vehicle Code section 22654(a) provides that if a car is unlawfully stopped or parked, then a police officer may "move [the disabled] vehicle . . . to the nearest available position off the roadway or to the nearest parking location."  Thus, if the officers were justified in believing that Defendant's car was creating a hazard, the proper and expected response would have been to move the vehicle, not impound it.  The Government makes no claim that moving the car to a parking location was impracticable – the accident occurred within a few yards of numerous on-street parking spaces and one block from the large municipal parking lot under the Business 80 freeway that the city uses every Sunday morning for its popular weekly farmers' market.

The Government argues that once the police tow truck arrived on scene, the officers had no other choice but to inventory the car. The Government further argues that even if the officers had just moved the vehicle two blocks, the car still had to be treated as a "stored vehicle" and both CVC Section 22850 and Sacramento Police Department General Orders Section 536.02 ("SPD Order") require the officers to take an inventory of the contents of the vehicle. A close examination of both CVC Section 22850 and the SPD

7

Order governing stored vehicles (Defendant's Motion to Suppress, Exhibit E) reveals no support for this argument.

California Vehicle Code Section 22850 contains no language recommending or requiring officers to fill out a Sacramento PD Vehicle/Inventory Report when removing a car from the highway or public property.[1]  The SPD Order also does not permit an officer to inventory the contents inside vehicles involved in traffic accidents as a general practice.  Rather, the policy directs officers to conduct an inventory for only five categories of vehicles, none of which cover the Defendant's car:

1. "recovery" cars, meaning a "found stolen vehicle";
2. "storage" cars, defined as those belonging to drivers who wish to have the vehicle stored at their own expense;
3. "impound" cars, which are those "kept for police custody until [a] legal obligation is fulfilled";
4. "evidence impound" cars, meaning those expected to be evidence in a trial;
5. "asset seizure" cars, defined as vehicles where a "public entity intends to take title of vehicle."

The Supreme Court crafted the inventory exception for three reasons: (1) to protect the owner's property while it remains in police custody; (2) to protect the owner's property while it

---

[1] The full language of Section 22850 is: Whenever an officer or employee removes a vehicle from a highway, or from public or private property, unless otherwise provided, he shall take the vehicle to the nearest garage or other place of safety or to a garage designated or maintained by the governmental agency of which the officer or employee is a member, where the vehicle shall be placed in storage.
At the time of such removal, the officer or employee shall determine the amount of mileage on the vehicle.

remains in police custody; and (3) to protect the police from danger. South Dakota v. Opperman, 428 U.S. 364, 370 (1976). None of these reasons exist in this case, particularly when the undisputed facts demonstrate that the Defendant was standing by his car at all times available to dispose of his own property and when the Defendant had already arranged for the removal of his car.

The law is also clear that an inventory search may be done only pursuant to a standardized and established policy and not as a ruse to explore private places without a warrant and probable cause. Bowhay, 992 F.2d at 231; Feldman, 788 F.2d at 553. In this case, there is no written authority under the California Vehicle Code or the applicable SPD Order which justifies the officers' decision to seize and inventory Defendant's car after the accident. The Government admits that the police officers could not point to any specific criminal activity by the Defendant which gave the officers probable cause to conduct a warrantless search of the car. Nor does the Court find persuasive the Government's argument that dual motives for the inventory search existed. Specifically, the Government argues that "searching the vehicle for investigative purposes was NOT [the police officers] primary purpose in inventorying the car. If anything, it was a secondary motive." Government's Opposition to Motion to Suppress at 8:18-20. The facts of this case do not support this argument. As noted above, the officers did not search Defendant's car in accordance with state law and department procedures. The impounding and inventory of Defendant's car cannot be explained as a "common practice" given that state law and police policies authorize the seizure and inventory of a man's car in limited circumstances. The Government

bears the burden of proving that the police officers' lawfully inventoried the Defendant's car. Its arguments and evidence fail to carry that burden.  Accordingly, the evidence found in Defendant's car must be suppressed.

## III. ORDER

For the reasons set forth above,

Defendant's Motion to Suppress Evidence is GRANTED.

IT IS SO ORDERED.

Dated: February 18, 2011

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE